**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**LATEE ROBINSON,**

                                        **Plaintiff,**

                        **-vs-**                                        **10-CV-326A(Sr)**

**VISCUSO, Prison Guard, et al.,**

                                        **Defendants.**
_____


## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #40.  Pending for determination is defendants' motion (Dkt.

#21) pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment

dismissing the complaint.

For the reasons that follow, it is recommended that defendants' motion be

granted in part and denied in part.


## BACKGROUND

Plaintiff Latee Robinson has been in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS")[1] since March 2006,

serving a sentence for second degree murder.  *See* Dkt. #21-1 (Deft. Local Rule 56

---

[1]By enactment of Chapter 62 of the Laws of 2011, the New York State Department of
Correctional Services ("DOCS") was merged with the New York State Division of Parole to create the New
York State Department of Corrections and Community Supervision ("DOCCS").  Although the events set
forth in the complaint are alleged to have taken place prior to the April 1, 2011 effective date of Chapter
62, the Court will herein refer to the agency by its more recent acronym "DOCCS."

Statement), ¶1).  He filed this action on April 20, 2010, seeking injunctive relief and money damages pursuant to 42 U.S.C. § 1983, asserting some eighteen separate claims against over seventy DOCCS employees based on various incidents or events alleged to have occurred at the Green Haven, Elmira, Upstate, and Five Points Correctional Facilities between July 2006 and January 2010.  *See* Dkt #1.

By decision and order entered August 16, 2010 (Dkt. #4), this Court granted plaintiff's request to proceed as a poor person; severed twelve of plaintiff's claims and transferred them to the U.S. District Courts for the Southern and Northern Districts of New York (where the Green Haven and Upstate Correctional Facilities are located, respectively); and dismissed with prejudice (and without leave to replead) three of the claims for failure to state a facially plausible claim upon which relief can be granted under 42 U.S.C. § 1983.  As a result, only the following claims remain viable for consideration by the Court on this motion for summary judgment:

1.     Plaintiff's "(First) Fifteenth Claim"[2] against Correctional Sergeant Willis McIntosh and Correctional Officers Angel Santiago, Jeremiah Clark, Angelo Viscuso, and Tina Zawistowski, alleging use of excessive force and denial of adequate medical care based on an incident at Five Points Correctional Facility on April 19, 2009  (Dkt. #1, p. 21);

---

[2]There are two claims numbered "Fifteen."  As nearly as can be deciphered, plaintiff's (First) Fifteenth Claim reads as follows:

> Defendant[s] … did the following to me … gang assault brutality staff's on inmate beating inmate with barrel stick of the baton continuous inmate hand and arm and other's used the [fist] as punches[ ] pounding inmate hand and arm to numbness from inmate holding feed up hatch 10-B2-46 cell cover annoy and denied inmate medical aid staff on mental health request before correction officers' false accusation, and false imprisonment[.]

Dkt. #1, p. 21

2. Plaintiff's "(Second) Fifteenth Claim" against Correctional Officers Annette Bascom, Erik Hibsch, Travis Hill, Steven Matice, Stephen Gould, and John Brown, alleging use of excessive force and denial of adequate medical care based on an incident at Five Points on April 20, 2009 (*id.* at 22);[3] and,

3. Plaintiff's "Seventeenth Claim" against Elmira Correctional Facility Superintendent Mark Bradt and Captain William Hughes, alleging denial of nutritionally adequate food based on his claim that he was placed on a restricted "loaf diet" at Elmira between January 7–26, 2010 (*id.* at 24).[4]

The facts pertaining to these claims, set forth separately below, are derived from the pleadings, discovery materials, supporting declarations, and other submissions on file, including the parties' statements of fact on summary judgment (Dkt. #21-1; *see also*

---

[3]Plaintiff's (Second) Fifteenth Claim reads as follows:

Defendant[s] … did the following to me … false accusation misconduct reports assault with the use as weapon top [b]unk bed and desk slam[m]ing inmate head than both correction officers Hill, Hi[b]sch use [fists],and kick to inmate head and body inside 12-A1-10 cell with the observer Sergeant John [D]oe escort inmate to infirmary inmate request to refuse [strip] search by guards correction officer's both C.O. Matice and C.O. Gould place inmate inside patient shower room shower running cold water with inmate [clothes] on, and handcuff on both wrist than both officer cut inmate clothing and slash inmate body with sharp weapon, and stick sharp point object inside inmate eye took a few photo no medical aid to sick call 4-23-09[.]

Dkt. #1, pp. 22-23.

[4]Plaintiff's Seventeenth Claim reads as follows:

Defendant[s] … were direct order to serve inmate meals morning noon and dinner loaf diet for 21 day continue S.H.U. Elmira C.F.

Dkt. #1, p. 24.

Dkt. #41, pp. 17-30), submitted in accordance with Rule 56 of the Local Rules of Civil Procedure for the Western District of New York.[5]

## 1.    Plaintiff's (First) Fifteenth Claim

The incident alleged in plaintiff's (First) Fifteenth Claim occurred on April 19, 2009, when plaintiff was housed in gallery 10-B2, Cell 46, at Five Points.  At approximately 4:15 p.m. on that day, Officer Clark was supervising the pickup of evening meal trays on gallery 10-B2, when he observed plaintiff with his right arm protruding through the feed-up slot and grabbing the hatch cover to hold it open. Officer Clark repeatedly directed plaintiff to let go of the hatch cover and put his arm back inside his cell, but plaintiff refused and became "argumentative and visibly agitated."  Dkt. #26 (Clark. Decl.), ¶ 8; *see* Dkt. #21-1, ¶¶ 5-7.

Officer Viscuso was making rounds on gallery 10-B2 at the time, and heard the commotion in the vicinity of plaintiff's cell.  As he approached, he observed plaintiff 's right arm protruding from the cell, preventing the feed-up hatch from being closed. Officer Viscuso stood to the side of the cell while Officer Clark repeatedly directed plaintiff to put his arm back inside the cell, to no avail.  Officer Viscuso then stepped in and ordered plaintiff to pull his arm back inside the cell, whereupon plaintiff reached out

_____

[5]Local Rule 56.1, in effect at the time the instant motion was filed, required that the moving party submit "a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried …," Local Rule 56.1(a), and that the opposing party submit a responding "statement of the material facts as to which it is contended that there exists a genuine issue to be tried."  Local Rule 56.1(b).
Plaintiff's "Memorandum of Law in Support of Plaintiff Opposing Cross Motion Defendants for Summary Judgment" (Dkt. #41), while every bit as incoherent as the original complaint, contains sufficient "arguably plausible" factual content (*see, e.g., id.* at 17-30) for the Court to find marginal compliance with the requirements of Local Rule 56.

with his right hand and grabbed Officer Clark's left wrist.  Officer Viscuso then used his

baton to deliver "several short blows" to plaintiff's right hand and forearm, eventually

breaking plaintiff's grasp on Officer Clark's wrist.  Dkt. #36 (Viscuso Decl.), ¶ 10; Dkt.

#21-1, ¶¶ 8-9.[6]

Officers Clark and Viscuso reported the incident to Sgt. McIntosh, who

responded to the scene soon after the incident.  Sgt. McIntosh prepared a Use of Force

Report (No. 09-040) in accordance with DOCCS and facility procedures.  *See* Dkt. #33,

¶ 7, & pp. 5-9.  Attached to the Report is a memorandum from Sgt. McIntosh to Five

Points Superintendent John Lempke, describing the force used during this incident as

follows:

> After several minutes of unsuccessfully talking to [plaintiff] Officer
> Clark stepped aside and Officer Viscuso ordered [plaintiff] to pull his
> hands inside [the cell].  At this time [plaintiff] grabbed Officer Clark's left
> wrist with his right hand.  Officer Clark then grabbed [plaintiff]'s right
> thumb with his right hand and simultaneously rotated his left wrist in an
> attempt to break the inmate's grasp.
>
> At this time Officer Viscuso immediately struck [plaintiff] on the right
> forearm with the butt of his baton attempting to invoke a pressure point
> response.  When this failed to make the inmate release his grasp Officer
> Viscuso delivered several short blows with the baton, most of which struck
> the feed up hatch.  Officer Clark was able to free his arm from [plaintiff]'s
> grasp and apply an upward pressure to the feed up hatch forcing it closed
> while the inmate was still attempting to hold the hatch cover.

*Id.* at 8.

Following the incident on April 19, 2009, plaintiff was escorted to the prison

infirmary where he was examined by Annette Holm, the Registered Nurse on duty.

---

[6]These facts are confirmed by the Court's viewing of a security camera video recording of the
incident described above, which has been submitted to the record as Exhibit A to the Declaration of Five
Points Deputy Superintendent John Colvin (Dkt. #27).

Nurse Holm prepared an Inmate Injury Report indicating that plaintiff presented with a small (0.3 cm) cut on the fifth (pinky) finger of his left hand, which was cleansed and treated with antibiotic ointment.  Plaintiff was able to move his fingers and wrists without difficulty.  He did not complain of any other injury.  *See* Dkt. #33 (McIntosh Decl.), pp. 6, 7, 26.

Photographs of plaintiff were taken at this time, showing the small cut on his left pinky finger and no other visible cuts or bruises.  *See id.* at 18-24.  Plaintiff was then transported to the Special Housing Unit (SHU), where he was admitted pending a disciplinary hearing.  *Id.* at 12.

Officer Clark prepared an Inmate Misbehavior Report regarding this incident (Dkt. #26, p. 10), charging plaintiff with violations of the following Institutional Rules of Conduct as set forth in DOCCS' Standards of Inmate Behavior: 104.11 (Violent Conduct); 104.13 (Creating a Disturbance); 106.10 (Refusing  Direct Order); 107.10 (Interference With Prison Employee); and 100.11 (Assault on Staff).  *See* N. Y. COMP. CODES R. & REGS. tit. 7, § 270.2(B).

## 2.    Plaintiff's (Second) Fifteenth Claim

On April 20, 2009 at approximately 9:30 a.m., plaintiff was removed from a Tier II disciplinary hearing upon becoming disruptive, and was escorted back to his cell by Officers Hibsch and Hill.  Upon reaching the cell, plaintiff lunged forward pulling the two officers down to the floor on top of him.  The officers maintained their hold on plaintiff as he struggled on the floor.  When he stopped resisting, the officers placed him on a

stretcher and transported him to the nurse's station for medical treatment.  Dkt. #21-1, ¶¶ 23-30.

Officers Hibsch and Hill reported the incident to Corrections Sergeant E. Zoladz, who  prepared Use of Force (No. 09-041) and Inmate Misbehavior Reports, along with a memorandum to Superintendent Lempke describing the force used during this incident as follows:

> As [plaintiff] was being escorted back to his cell (12-A1-10) by Officers T. Hill and E. Hibsch he became agitated and tried to break free from the escorting officers.  Both officers maintained control of [plaintiff] using body holds.  As they approached 10 cell [plaintiff] lunged forward into the cell. Officer Hill maintained control of the right side of the inmate by holding his right elbow with his left hand and his right shoulder with his right hand. Officer Hibsch maintained control of the handcuffs with his right hand while controlling his left elbow with his left hand.  As they entered the cell [plaintiff] fell to the floor and continued to struggle for approximately 10 seconds.  He then stopped resisting and was placed on a stretcher to be taken to medical.

Dkt. 31 (Hill Decl.), p. 9.

Plaintiff was examined by R.N. Ellison, who reported that plaintiff suffered a ¼ cm cut within a 2 cm raised area on his forehead.  Plaintiff complained of back pain, but no redness or swelling was noted, and no further treatment was required.  He was then transported to the infirmary where he was seen by Physician's Assistant Haimes, who also reported no further complaints of injuries.  *Id.* 7-9.

Following his examination at the infirmary, plaintiff was taken for use of force photographs.  He refused to remove his clothes, and a non-defendant corrections officer cut off plaintiff's clothes without further incident.  The photographs taken depict the small cut within the raised area on plaintiff's forehead, but no other significant injuries.  *See id.* at 15-17; *see also* Dkt. #28 (Gould Decl.), ¶¶ 4, 5.

Officer Hibsch prepared an Inmate Misbehavior Report regarding this incident, charging plaintiff with violating Rules 106.10 (Direct Order), 104.13 (Disturbance), and 109.12 (Inmate Movement). *See* Dkt. #30, p. 13. A Tier III Disciplinary Hearing was held on April 29, May 6, May 11, and May 12, 2009, in connection with this incident. *See* Dkt. #23, pp. 9-84 (hearing transcript). Plaintiff was found guilty of the rule violations charged, and a disciplinary penalty was imposed resulting in SHU confinement and loss of package, commissary and phone privileges for four months. *Id.* at 81.

**3.     Plaintiff's Seventeenth Claim**

Plaintiff alleges that in January 2010, while housed in the "Satellite Unit" at the Elmira Correctional Facility, he was served a "loaf diet" at each meal for 21 consecutive days. *See* Dkt. #1, p. 24. This allegation has been construed by the Court as sufficient to assert a claim against Elmira Superintendent Mark Bradt and Captain Willis Hughes for deprivation of nutritionally adequate food, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Dkt. #4, pp. 15-16.

Defendants move for summary judgment dismissing each of these three remaining claims. For the reasons that follow, it is recommended that the motion be granted in part and denied in part.

## DISCUSSION

**I.     Summary Judgment**

Rule 56 provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R .Civ. P. 56(a). Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged. *See, e.g., Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 311 n. 7 (S.D.N.Y. 2011). Under those standards, the party seeking summary judgment bears the initial burden of establishing that no genuine issue of material fact exists. *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, 445 F. App'x 387 (2d Cir. 2011). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law ...." *Id.*

Once the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed ...." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted), *quoted in Kaminski v. Anderson*, 792 F. Supp. 2d 657, 662 (W.D.N.Y. 2011). In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that

party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

The court recognizes its duty to "extend extra consideration" to *pro se* plaintiffs and that "*pro se* parties are to be given special latitude on summary judgment motions." *Bennett v. Goord*, 2006 WL 2794421, at *3 (W.D.N.Y. Aug.1, 2006) (quoting *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998)), *aff'd*, 2008 WL 5083122 (2d Cir. 2008); *see also McPherson v. Camb.*, 174 F.3d 276, 280 (2d Cir. 1999) (*pro se* party's pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest"). "Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Aertex*, 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## II.     Defendants' Motion

### A.     42 U.S.C. § 1983

Plaintiff brings his claims under 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

"In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see also Kasiem v. Guzman*, 2011 WL 4352387, at *3 (W.D.N.Y. September 16, 2011).

As set forth above, the claims remaining for determination in the action before this Court involve plaintiff's allegations that he was deprived of his Eighth Amendment rights by prison officials acting under color of state law as a result of being subjected to excessive force by Corrections Officers at Five Points on two successive days in April 2009; being denied adequate medical care by prison staff following each of those incidents; and being denied nutritionally adequate food by prison staff for three consecutive weeks during punitive S.H.U. confinement at Elmira in January 2012. Defendants' motion seeks summary dismissal of each of these claims on the ground that, based on the facts presented by way of the pleadings, sworn declarations, and other submissions and exhibits on file (including plaintiff's deposition testimony and the video of the April 19, 2009 incident), no rational jury could find in favor of plaintiff under the legal standards for examining prison inmates' Eighth Amendment claims premised on the use of excessive force, denial of adequate medical care, or denial of nutritionally adequate food. *See* Dkt. #21-2.

**B.      Excessive Force**

The Eighth Amendment to the U.S. Constitution provides that "cruel and unusual punishments [shall not be] inflicted."  U.S. Const. amend. VIII.  This prohibition, applicable to the states through the Fourteenth Amendment, *see Estelle v. Gamble*, 429 U.S. 97, 101–02 (1976), is violated by the infliction of "unnecessary and wanton pain and suffering."  *Whitley v. Albers*, 475 U.S. 312, 320 (1986).

To determine whether prison officials have violated the Eighth Amendment by using excessive force, courts examine "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  This inquiry has both an objective test and a subjective test.  *Id.* at 7–8.  The objective test requires the inmate to show that the force applied was "sufficiently serious" to establish a constitutional violation.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (additional citations omitted)).  This showing is "context specific, turning upon 'contemporary standards of decency.' "  *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999)).

While "some degree of injury is ordinarily required" to meet the objective prong of the excessive force inquiry, *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999), and "a *de minimis* use of force will rarely suffice …," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citation omitted), a plaintiff "need not prove 'significant injury' to make out an excessive force claim."  *Griffin*, 193 F.3d at 92.  The core judicial inquiry, however, is not the extent of the injury, if any, but whether the nature of the force used was "nontrivial and was applied maliciously and sadistically to cause harm."  *Wilkins v.*

*Gaddy*, 559 U.S. 34, 39 (2010) (internal quotation marks and alteration omitted); *see also Wright v. Goord*, 554 F.3d 255, 268–69 (2d Cir. 2009).

The subjective test for an Eighth Amendment excessive force claim requires the inmate to show that the prison officials "had a 'wanton' state of mind when they were engaging in the alleged misconduct." *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (citing *Hudson*, 503 U.S. at 7). When determining whether the subjective test has been satisfied, courts may consider: "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials' and 'any efforts made to temper the severity of a forceful response.' " *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321). Where "a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically," summary judgment is improper "even where the plaintiff's evidence of injury [is] slight and the proof of excessive force [is] weak." *Wright*, 554 F.3d at 269.

### 1.    The April 19, 2009 Incident

As confirmed by the Court's viewing of the security camera video, and as evidenced by the infirmary photographs, the force applied by Officers Clark and Viscuso during the incident on April 19, 2009 was, objectively, sufficiently serious to cause some minor injury to plaintiff's hand. This evidence is also sufficient to support a reasonable inference that the force applied could have caused plaintiff to suffer numbness in his arm, as alleged.

However, the evidence of record also establishes that Officers Viscuso and Clark applied only the amount of force necessary under the circumstances "in a good-faith effort to maintain or restore discipline," and not "maliciously and sadistically to cause harm." *Wright*, 554 F.3d at 268 (citing *Hudson*, 503 U.S. at 7; *Blyden*, 186 F.3d at 262-63). Plaintiff does not dispute, and the video confirms, that plaintiff's arm was protruding out of the feed-up hatch, and that the officers repeatedly ordered him to bring his arm back inside the cell. *See* Dkt. #22, Exh. A (Transcript of Pltff's 11/17/2011 Deposition), pp. 32, 34. Plaintiff's visible state of agitation could be reasonably perceived by the officers as a threat to prison security, and their verbal orders demonstrate a reasonable attempt at measured response. When their verbal orders failed, Officer Viscuso stepped in to assist Officer Clark in his attempt to close the feed-up hatch. The video also shows that Officer Viscuso first applied pressure to plaintiff's arm, and only resorted to using his baton when plaintiff grabbed Officer Clark by the wrist. *See* Dkt. #21-1, ¶¶ 5-9. Moreover, the limited range of motion with which Officer Viscuso used his baton provides further evidence of a tempered response to a reasonably perceived security threat, as well as a rational relationship between the need to maintain order and the amount of force applied.

Based on this evidence, even when viewed in the light most favorable to plaintiff, no rational juror could find that Officers Clark and Viscuso responded to the situation by applying force "maliciously and sadistically to cause harm," or with "the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances …." *Wright*, 554 F.3d at 268. Rather, the available proof establishes

that Officers Viscuso and Clark applied only the amount of force necessary under the circumstances in a good-faith effort to maintain or restore discipline.

Accordingly, this Court finds that plaintiff cannot meet the subjective prong of the excessive force inquiry, and that no triable issues of fact remain with respect to plaintiff's claim that defendant Viscuso and Clark used excessive force against him during the incident on April 19, 2009, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. On this basis, it is respectfully recommended that defendants' summary judgment motion be granted to the extent it seeks dismissal of this claim.

### 2. The April 20, 2009 Incident

Plaintiff does not dispute that he was removed from the Tier II disciplinary hearing on April 20, 2009, and was escorted back to his cell in the Special Housing Unit by Officers Hill and Hibsch. He claims that, while placing him in the cell, the officers slammed his head on a bunk and desk, and punched and kicked him while he was on the cell floor with his hands cuffed behind his back.[7]

As discussed above, the infirmary reports and photographs show that plaintiff suffered a ¼ cm cut within a 2 cm raised area on his forehead during this incident. While there is nothing in the reports and photos (or elsewhere in the record) to support plaintiff's allegations that his body was slashed and a sharp object was stuck in his eye during this incident, when viewed in the light most favorable to plaintiff, the Court finds

_____

[7]As indicated by the testimony at the Tier III Disciplinary Hearing regarding the April 20, 2009 incident, a video recording of this incident apparently was made, *see* Dkt. #23, Exh. A, Bates No. 000486-87, but (unlike the video of the April 19th incident) this video has not been submitted to the record on summary judgment.

the available evidence adequate to support a reasonable inference that the force applied during the April 20, 2009 incident was "sufficiently serious" to satisfy the objective prong of the excessive force inquiry.

With regard to the subjective prong, the court recognizes that the proof in the summary judgment record, both of plaintiff's injuries and of the amount of force applied during this incident, is slight. Nonetheless, if "a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically," summary judgment is improper "even where the plaintiff's evidence of injury [is] slight and the proof of excessive force [is] weak." *Wright*, 554 F.3d at 269. Crediting plaintiff's version of events,[8] as this court must in considering defendants' motion, *see Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003), there is a question of fact whether, upon placing plaintiff in Cell 12-A1-10, the officers applied force unrelated to any effort to maintain order or discipline. *See Clarke v. Anderson,* 2012 WL 3292879 (W.D.N.Y. Aug. 10, 2012) (despite no visible injuries, summary judgment denied where plaintiff alleged that he was victim of unprovoked assault); *Abascal v. Fleckenstein*, 2012 WL 638977, *6 (W.D.N.Y. Feb. 27, 2012) (despite minor injury, summary judgment denied where plaintiff alleged that CO committed brief but unprovoked assault unrelated to any effort to maintain or restore discipline); *see also Griffin*, 193 F.3d at 90–92 (although plaintiff could offer only his own testimony and evidence of a bruised shin and a swollen left knee in support of his excessive force claim, dismissal was inappropriate because there

---

[8]Plaintiff's version is bolstered somewhat by the Tier III Hearing testimony of inmate witnesses Saxon (*see* Dkt. #23, Exh. A, Bates No. 000495-96) and Kello (*see id.* at Bates No. 000497-99).

were genuine issues of material fact concerning whether correction officers, whom plaintiff admittedly assaulted, maliciously used force against him after he was subdued and handcuffed); *Jordan v. Fischer*, 773 F. Supp. 2d 255, 272 (S.D.N.Y. 2011) (although plaintiff suffered only minor injury, summary judgment denied where excessive force claims turned on issues of credibility).

In so concluding, this Court expresses no view on the underlying merits of plaintiff's claim, but notes only that, if successful, "the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover." *Wilkins*, 559 U.S. at 40.

Accordingly, it is recommended that the Court deny defendants' summary judgment motion to the extent it seeks dismissal of plaintiff's Eighth Amendment claim against defendants Hill and Hibsch based on their alleged use of excessive force during the incident on April 20, 2009. It is further recommended that the Court grant defendants' motion to the extent it seeks dismissal of plaintiff's claims against defendants Bascom, Matice, Gould, and Brown based on the lack of any evidence in the summary judgment record to indicate that any of these defendants were personally involved in the events giving rise to this claim. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks and citation omitted).

**C.     Deliberate Indifference**

The Eighth Amendment's prohibition against cruel and unusual punishment has also been construed by the courts to include denial of adequate medical care for an inmate's serious medical needs.  *See Farmer v. Brennan*, 511 U.S. at 832; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Baskerville v. Tremlett*, 2013 WL 286362, at *4 (W.D.N.Y. Jan. 24, 2013).  To show that prison medical treatment was so inadequate as to amount to an Eighth Amendment violation, the inmate must prove that the prison officials' actions or omissions amounted to "deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106; *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

Analysis of a Section 1983 claim for deliberate indifference to a serious medical need involves a two-pronged inquiry consisting of objective and subjective elements. First, the court must determine whether plaintiff's condition is such that the alleged deprivation of medical assistance is, "in objective terms, 'sufficiently serious.' " *Hathaway v. Coughlin*, 37 F.3d 63, 66–67 (2d Cir. 1994) (quoting *Wilson v. Seiter*, 501 U.S. at 298).  Second, the court must consider whether prison officials " 'knew that an inmate faced a substantial risk of serious harm, and disregarded that risk by failing to take reasonable measures to abate it.' " *Baskerville*, 2013 WL 286362, at *5 (quoting *Woods v. Goord*, 2002 WL 31296325, *2 (S.D.N.Y. Oct. 10, 2002)).

A serious medical need is one with some urgency or one which, if ignored, may produce death, degeneration or extreme pain.  *Hathaway,* 37 F.3d at 66.  There is no precise metric to guide the court in its estimation of the seriousness of a prisoner's medical condition, *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003), and inquiry into

the objective component of an Eighth Amendment claim must be tailored to the specific facts of each case. *See Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003). The Second Circuit has set forth a non-exhaustive list of factors to be considered when conducting this inquiry, including: (1) whether a reasonable doctor or patient would perceive the medical need in question as "important and worthy of comment or treatment;" (2) whether the medical condition significantly affects daily activities; and (3) "the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Having reviewed the summary judgment record in light of relevant case law, this Court concludes that plaintiff's injuries as a result of the use of force incidents at Five Points on April 19 and 20, 2009, were at least marginally "serious" for purposes of the Eighth Amendment. However, to succeed on his claim, plaintiff must also satisfy the subjective prong of the deliberate indifference inquiry by showing that prison officials acted with a "sufficiently culpable state of mind" by failing to render proper care despite knowing that the injuries presented a substantial risk of serious harm. This plaintiff cannot do.

The infirmary records submitted for the Court's review on this motion clearly show that plaintiff was seen by medical staff immediately following each of the incidents at issue, and that treatment was either administered or deemed unnecessary upon evaluation. Even if the injuries he reported could be found by a rational factfinder to present a significant risk of harm, plaintiff has not specifically pleaded or otherwise identified any facts to indicate what was lacking about the medical care he received at Five Points. Additionally, this Court's review of the summary judgment record has

revealed no evidence upon which a reasonable inference could be drawn that prison officials were aware that plaintiff faced a substantial risk of harm, yet failed to render proper medical care.

In the absence of such evidence, no reasonable jury could find in favor of plaintiff on his claim that Five Points prison officials were deliberately indifferent to his serious medical needs following the use of force incidents which occurred on April 19 and 20, 2009. *Clay v. Kellmurray*, 465 F. App'x 46 (2d Cir. 2012) (granting summary judgment in denial of medical care case where there was no evidence to support a sufficiently culpable state of mind). Accordingly, defendants are entitled to summary judgment dismissing plaintiff's Eighth Amendment claims based upon deliberate indifference.

### D.    Denial of Nutritionally Adequate Food

Plaintiff's final claim for consideration on this motion relates to his allegation that he was served a "loaf diet" at each meal for 21 consecutive days during his S.H.U. confinement at Elmira in January 2010. This claim should be dismissed for failure to exhaust administrative remedies.

The Prisoner Litigation Reform Act of 1995 ("PLRA") mandates exhaustion by prisoners of all administrative remedies before bringing an action regarding prison conditions. *See* 42 U.S.C. § 1997e(a). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.*

The Supreme Court has held that the PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Smart v. Goord*, 441 F. Supp. 2d 631, 636 (S.D.N.Y. 2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Failure to exhaust is an absolute bar to an inmate's action in federal court; section1997e(a) "requires exhaustion of available administrative remedies before inmate-plaintiffs may bring their federal claims to court at all." *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002).

In assessing the affirmative defense of non-exhaustion, the Second Circuit employs a three-part inquiry. *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). A court must (1) determine whether administrative remedies were in fact "available" to the prisoner; (2) consider whether the defendant has forfeited the affirmative defense of non-exhaustion or is estopped from raising it; and (3) determine whether "special circumstances" justify the prisoner's failure to comply with administrative procedural requirements. *Id.* "Courts should be careful to look at the applicable set of grievance procedures, whether city, state or federal" in assessing availability. *Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003).

In New York, a prison inmate's administrative remedies consist of a three-step grievance and appeal procedure: (1) investigation and review of the grievance by the Inmate Grievance Resolution Committee ("IGRC"), which is comprised of inmates and DOCCS employees; (2) if appealed, review of the IGRC's determination by the

superintendent of the facility; and (3) if the superintendent's decision is appealed, review and final administrative determination by the Central Office Review Committee ("CORC").  *See* 7 N.Y.C.R.R. § 701.5.  All three steps of this procedure must ordinarily be exhausted before an inmate may commence suit in federal court. *Morrison v. Parmele*, 892 F. Supp. 2d 485, 488 (W.D.N.Y. 2012) (citing *Porter*, 534 U.S. at 524).

In this case, as set forth in the Declaration of Jeffrey Hale, Assistant Director of DOCCS' Inmate Grievance Program, a review of the grievance records reveals that plaintiff failed to exhaust his administrative remedies by appealing the alleged denial of food to the CORC.  Dkt. #29, ¶ 13.  These administrative remedies were available to plaintiff; defendants pleaded exhaustion as an affirmative defense (*see* Dkt. #6, ¶ 13); and there is no factual basis to support a finding of special circumstances justifying the plaintiff's failure to complete administrative review of his dietary claim by appeal to the CORC.

Accordingly, it is respectfully recommended that the Court grant defendants' summary judgment motion to the extent it seeks dismissal of plaintiff's denial of nutritionally adequate food claim for failure to fully exhaust the administrative remedies available to him under 7 N.Y.C.R.R. § 701.5 prior to seeking redress in this Court for violation of his Eighth Amendment rights based on the conduct of prison officials at the Elmira Correctional Facility, as required under 42 U.S.C. § 1997e(a).  *Cf. Medina v. Napoli*, 2012 WL 5288713, at *4-6 (W.D.N.Y. Oct. 24, 2012).

### E. Qualified Immunity

Finally, defendants contend that, to the extent any of plaintiff's claims survive summary judgment, they are entitled to qualified immunity. "The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The right of prison inmates to be free from the use of excessive force was clearly established in April of 2009. *See, e.g., Russo v. City of Bridgeport*, 479 F.3d 196, 212 (2d Cir. 2007). As discussed above, viewing the evidence of record in the light most favorable to the plaintiff, he has raised a genuine issue of material fact regarding the use of force by defendants Hill and Hibsch on April 20, 2009. Accordingly, defendants are not entitled to summary judgment dismissing this claim on the ground of qualified immunity.

### CONCLUSION

For the foregoing reasons, it is recommended that defendants' motion for summary judgment (Dkt. #21) be GRANTED to the extent it seeks dismissal of plaintiff's (First) Fifteenth Claim, and plaintiff's Seventeenth Claim, in their entirety.

It is further recommended that defendants' summary judgment motion be GRANTED to the extent it seeks dismissal of plaintiff's (Second) Fifteenth Claim as against defendants Bascom, Matice, Gould, and Brown, based on their lack of personal involvement in the incident at Five Points Correctional Facility on April 20, 2009.

It is further recommended that defendants' summary judgment motion be DENIED to the extent it seeks dismissal of plaintiff's (Second) Fifteenth Claim as against defendants Hill and Hibsch, based on their alleged use of excessive force during the incident at Five Points Correctional Facility on April 20, 2009.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). <u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order</u>. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections</u>

to a Magistrate Judge's Report, Recommendation and Order), may result in the District

Judge's refusal to consider the objection.


DATED:      Buffalo, New York
            July 15, 2013


                                  _s/ H. Kenneth Schroeder, Jr._
                                  **H. KENNETH SCHROEDER, JR.**
                                  **United States Magistrate Judge**